## PETWAY v. DOBSON et al.
### No. 156 Civil.

District Court, M. D. Tennessee, Nashville Division.

Feb. 7, 1942.

Harry Nelson, Jr., Harry G. Nichol, and Lewis C. Payne, all of Nashville, Tenn., for plaintiff.

William P. Cooper, of Nashville, Tenn., for defendants.

DAVIES, District Judge.

This action was tried by the Court without a jury, and after hearing all the evidence and argument of counsel, the Court hereby makes the following findings of fact and conclusions of law:

#### Findings of Fact.

No. 1. The defendants, Allen Dobson, Matt H. Dobson, Jr., and Edward D. Hicks, Jr., are partners doing business under the name and style of Dobson-Hicks Company, and at all times since October 24, 1935, the effective date of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 201–219, have been so engaged in the wholesale seed business at 110 Second Avenue, North, and 415 Chestnut Street in Nashville, Tennessee. From the effective date of the Act and to May 1, 1940, the complainant, Frank Petway, was employed by the defendants in their said business.

No. 2. The defendants operate a large warehouse on the Louisville & Nashville Railroad at the Chestnut Street crossing at Nashville, Tennessee, where seeds are processed, stored, cleaned, etc. The business of this warehouse is wholesale, practically in its entirety, sales from the warehouse stock being made both from the warehouse, the general office and defendants' retail store at wholesale prices. The complainant, Frank Petway, was not employed at this warehouse, but there were some ten, or more, employees not salesmen, with a Mr. Coleman in charge of the warehouse. Mr. Coleman frequently made sales at wholesale prices and in wholesale quantities there, but his sales amounted to only a small portion of the wholesale business of defendants. A major proportion of all the wholesale business in seeds, fertilizer, etc., conducted by defendants is admittedly in interstate commerce.

No. 3. The defendants, Dobson-Hicks Company own a certain building at 110 Second Avenue, North, Nashville, Tennessee, more than one mile distant from the warehouse at Chestnut Street and the Louisville & Nashville Railroad. This is a three story building with basement. It extends from the East margin of Second Avenue North to the West margin of First Avenue North, and immediately adjacent to the rear of the building is a spur track where carload shipments are unloaded and transferred into the basement and other parts of defendants' building.

In the East end of the building, on the main floor thereof, is located the main offices of Dobson-Hicks Company. These general offices are in one room about 20 by 25 feet. All general books and records, wholesale and retail, are kept in this office. All records of the individual partners are kept there, and part of the office is rented out to another independent business known as Dobson & Company. Exclusive of said general office, all the remainder of the said building at 110 Second Avenue North is occupied by the retail store of the defendants, and they there conduct and carry on a retail seed business. Sales being made direct to consumers in small quantities at retail prices, which are higher than wholesale prices. The said retail establishment containing counters, shelves, and wrapping paper for wrapping small lot retail sales, and the greater part of the business.

of this establishment consists of retail sales made in intrastate commerce direct to consumers at retail prices. This retail establishment is physically separated from the said general office, being cut off by a wall on the first floor.

No. 4. The complainant, Frank Petway, was employed at the said store 110 Second Avenue North, and practically all of his duties were performed there. He wrapped packages for customers, he weighed out seeds in small lots and put the seeds in bundles in small lots and rolled them to the front door, where he would put them in the customers' automobiles. He put the display seeds on the sidewalk in front of the store to attract customers during the day and moved these displays into the store at night. The services he performed in the general office where the wholesale business was carried on, were to sweep it out and clean it upon his arrival at the store in the morning. This took about thirty minutes to one hour of his time every day. He also unloaded freight cars of shipments in interstate commerce, some of which contained basic materials which were made into fertilizer by defendants and shipped in interstate commerce which fertilizer he helped load into cars for interstate shipment.

No. 5. Seventy-five per cent, or more, of the business done at the said store, 110 Second Avenue North, is retail business and consists of small sales sold direct to consumers at retail prices and is done in intrastate commerce. Mr. Brantley, the manager of this retail store, estimated that seventy-five per cent or more, of this business was such, but it was not unusual for Mr. Brantley to make sales of seed in large quantities at wholesale prices to interstate customers from the retail store and he estimated about twenty-five per cent of the total sales made at the retail store were wholesale, sometimes being delivered from the retail store and at other times delivery being made from the warehouse.

Said retail store at 110 Second Avenue North has one all-time salesman, Mr. Brantley, who is in charge of it, two all-time negro laborers, one being the complainant, Frank Petway, and a part-time retail salesman named Mathews.

In addition to seeds this retail business handled car-loads of fence-wire. All of this fence-wire was interstate shipments, delivered at the retail store in car lots and unloaded by plaintiff but was sold at retail in intrastate commerce except an occasional isolated sale of a few rolls to some dealer who was out of wire at the time.

No. 6. There was no regular sales force maintained at the warehouse wholesale department of Dobson-Hicks Company. However, Mr. Coleman, the manager in charge there, did make wholesale sales there from the goods in the warehouse.

At the said general office Mr. Ed Hicks, Mr. Matt Dobson, Jr., Mr. Allen Dobson and Mr. Duncan Fort, all had their desks, and all sold seeds at wholesale, the orders being telephoned to the warehouse where they were filled. These orders would come by mail, over the telephone, and sometimes by persons coming into the general office, and these sales were made at wholesale prices to customers within and without the State of Tennessee; the greater part however, being interstate sales.

These four parties who sold at wholesale in this manner did not make any retail sales to the consuming public in the said retail store.

No. 7. The greater part of the defendants' business and the basic nature of its business is that of a wholesale dealer in seeds. It operated the said store or establishment at 110 Second Avenue North as a retail store or establishment so that it could earn the' retailer's profit. Mr. Brantley, manager in charge of such store, had his desk and office at the front end of the store on First Avenue North. He kept sales records there at his office, had a cash register, made out sales invoices, etc., all of which records relating to the sales and cash receipts were subsequently turned in to the general office at the rear of the building where all of the records, retail and wholesale, were kept. There was no separation of the records of the retail or wholesale business; both classes of business being carried on the same books of the defendants. The retail and wholesale accounts receivable were not carried separately on the company's records, and there was nothing to designate whether or not any particular account receivable represented sale at wholesale or retail, except possibly the price of articles purchased. The defendants did not carry one set of books for the wholesale business and another set for the retail business; when it was necessary to replenish the stock in trade at the retail store, bags of seed and other articles would be sent from the warehouse and put into stock in the retail store with-

out any charge or memorandum being made against the retail business. Both branches of the business, retail and wholesale, were regarded as one business by the defendants, that of Dobson-Hicks Company, whose business was regarded as being a general wholesale dealer in seeds, with one set of books for the entire business, and no separation thereon between the retail or wholesale branches. No charges or credits were ever made on the books in favor of one branch or against the other.

No. 8. Frank Petway, the complainant worked directly under Mr. Brantley in the retail store; took his orders from Mr. Brantley and was subject to his control. Mr. Brantley regulated the hours of employment, and testified that during the period from October 24, 1938, to May 1, 1940, Petway went to work about 7 A. M. and left the store about 5:30 in the afternoon, with from one-half to one hour off at lunch. In slack periods in the seed business, which was shown to be seasonal, he would not work that long, and from all the proof relating to his hours of employment, the Court finds that during the period in question he worked on an average of fifty-five hours per week, for which he received $13.00 each week. On the basis of computation provided by law, there is due the complainant $251.94, if he is engaged in commerce as contemplated by the Act.

## Conclusions of Law.

No. 1. The Court has jurisdiction of the parties hereto and the subject matter of this cause, under Section 16(b) of the Fair Labor Standards Act of 1938.

No. 2. Where the retail and wholesale branches of the business of the defendants were regarded and treated by them as one entire business, with one set of books upon which there was no separation between the retail or wholesale branches, and where merchandise was delivered from the wholesale to the retail branch for the purposes of sale to the public without any charge being made upon the books of the company against the retail business, and where twenty-five per cent of the business done by the retail branch consisted of seeds, etc., sold at wholesale prices to wholesale customers, there was not sufficient physical separation between the wholesale and retail branches so as to make the retail business operated by defendants an entirely separate entity, such as to be entitled to the exemption provided for in Section 13(a)(2) of the Act. The mere fact that the office of the business where a major portion of the sales at wholesale were made was physically separated from the retail store by a brick wall, would not be a sufficient separation of the two branches of the business, to make each one a distinct and separate entity.

No. 3. Under such circumstances where it is admitted that the larger proportion of defendants' wholesale business is in interstate commerce, the complainant who is an employee of the retail store, would be engaged in commerce as contemplated by the terms and provisions of the Act, especially when in addition to his duties at the retail store, the proof shows that he worked for half an hour each day in the office where the wholesale business was carried on, and unloaded freight from cars containing shipments in interstate commerce, some of which contained basic materials later made into fertilizer by defendants, and shipped in interstate commerce, which shipment complainant helped load into cars for that purpose.

No. 4. Complainant is entitled to recover from the defendants the sum of $251.94, representing unpaid, minimum wages due him, and liquidated damages in the sum of $251.94, as provided by the Act, together with an attorney's fee in the sum of $50, making in all total of $553.88, for which the complainant is entitled to have a judgment. The defendants will be required to pay the costs of this cause. Judgment will be entered accordingly.